### UNITED STATES v. PARAMOUNT PICTURES, Inc., et al.

District Court, S. D. New York.

Jan. 20, 1948.

Tom C. Clark, Atty. Gen., for plaintiff.

Post, Morris & Lovejoy, of New York City (Winslow M. Lovejoy and Houston H. Wasson, both of New York City, of counsel), for New Salinas Theatres, Inc.

Dwight, Harris, Koegel & Caskey, of New York City (John F. Caskey, Frederick W. R. Pride, and Robert E. Nickerson, all of New York City, of counsel), for defendants Twentieth Century-Fox Film Corporation and National Theatres Corporation.

BRIGHT, District Judge.

New Salinas Theatres, Inc., not a party to the above entitled action, petitions for an order adjudging the defendants Twentieth Century-Fox Film Corporation and National Theatres Corporation to be in contempt of the final decree entered herein on December 31, 1946, 70 F.Supp. 53, and for damages and counsel fees, alleging that said defendants have violated section III subdivision (6), which restrains said defendants "from expanding its present theatre holdings in any manner whatsoever except as permitted in the preceding paragraph" (an exception which at present has no materiality).

It appears without dispute that petitioner is and since 1939 has been engaged in the business of exhibiting motion pictures in the Vogue Theatre in Salinas, California. On April 7, 1946, it purchased a lot in Watsonville, California, for the purpose of constructing a new motion picture theatre thereon and is proceeding with the construction thereof. No theatre had been constructed at the date of this application.

The defendant National Theatres Corporation is the owner through subsidiaries of two-thirds of the stock of Fox Salinas Theatres, Ltd., which has since 1931 been the lessee and operator of the Fox California Theatre in Salinas, and in association with Borg and Peters, has been the operator of the El Rey Theatre there. Fox Salinas is also the lessee of the Strand Theatre in that city, which has been subleased to Borg and Peters, at a fixed rental. These were the only motion picture theatres in Salinas until petitioner erected the Vogue in 1939.

In that year, Borg and Peters acquired title to a piece of property in Salinas for the purpose of erecting a theatre thereon, and entered into negotiations with Fox Salinas for the purpose of having the latter acquire a one-half interest in the site and pay one-half of the construction cost of the new theatre. Nothing was done, largely because of the impact of the war, until August 21, 1945, when Fox Salinas did acquire the one-half interest. Shortly thereafter a contract for the construction of the theatre on the site was executed and construction commenced. The opinion upon which the decree in question was entered was filed in this action on June 11,

1946. When the decree was filed on December 31, 1946 (which provided for a ninety day stay in the event of an appeal which was thereafter taken), the construction of the theatre was substantially completed, the only work remaining to be done was some decorating and painting, the alteration of some doors and hardware and the installation of sets and projection equipment. On March 31, 1947, when the stay mentioned expired, the theatre was ready for operation but its actual opening did not take place until April 10, 1947, and since then it has been continuously operating.

West Coast Theatres, substantially all of whose stock is owned through a subsidiary by the defendant National Theatres Corporation, is the lessee of the only three theatres in Watsonville—the Fox, the State and the Pajaro, which latter was closed shortly after it was leased in 1936. During the war, it was determined to open the Pajaro but it was found that extensive renovation and remodeling would have to be done to comply with building ordinances. The lease expires in 1949 and West Coast has been unable to make satisfactory arrangements for the purchase of the property. In February 1946, it secured an option to purchase other property for the purpose of erecting a theatre thereon. The purchase was completed on February 27, 1946, and title taken on May 1, 1946. On May 5, 1947, it commenced excavation for the theatre. West Coast claims that the erection of the theatre on the new site would be for the purpose of replacing its Pajaro theatre when the lease is terminated or expires.

Defendant National Theatre claims that its action in Salinas and Watsonville with reference to new theatres would not in any way violate the provision of the decree quoted, for the reason that in Salinas the property had been acquired and the theatre practically completed at the time the decree was signed, and in Watsonville, that the construction of the new theatre would not be an expansion of its theatre holdings but merely a replacement of the Pajaro, which is closed and which it cannot reasonably be expected to renovate and remodel unless it can obtain title, which it has been unable to do.

The decree entered in this action on December 31, 1946, also provided in section VIII:

"Jurisdiction of this cause is retained for the purpose of enabling any of the parties to the judgment and no others, to apply to the court at any time for such orders or direction as may be necessary or appropriate for the construction, modification, or carrying out of the same, for the enforcement of compliance therewith, and for the punishment of violations thereof, or for other or further relief."

Counsel for the plaintiff in this action were present in court at the time of the argument of the motion but did not join in or oppose the motion.

■ Both parties agree that the petitioner's application is to punish for a civil contempt. The defendants oppose the motion on the grounds (1) that petitioner, not being a party, has no standing to institute this proceeding (a) because the decree expressly prohibits, and (b) because it is not an aggrieved party; (2) that the proceeding is premature because of a pending appeal from the final judgment mentioned to the United States Supreme Court; (3) because petitioner's moving papers are defective under rule 16 of the local rules of this court, in that they fail to set out with particularity the claim for damages and the evidence upon which the amount of damages may be determined; (4) that no civil contempt may be found unless a plain violation of the decree is proved; and (5) the two defendants have not violated the provision of the decree first above quoted under the facts as previously outlined in this memorandum.

In my opinion, it will not be necessary to decide any of the objections above stated except the first.

It is to be observed that the clause in the decree of December 31, 1946, reserving jurisdiction in the court, was only for the benefit of the parties to the action "and no others." Plaintiff claims that it is authorized to pursue the present remedy by rule 71 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides:

"Rule 71. Process in Behalf of and Against Persons Not Parties. When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, he is liable to the same process for enforcing obedience to the order as if he were a party."

The decree was not "made in favor" of the petitioner and it is not a successor in interest of any party. It was made in favor only of the parties to the litigation and by its terms expressly reserved the right to enforce only to the parties "and no others."

Petitioner argues that it is a proper party under the anti-trust statutes, which do not confine their enforcement to the United States or any of its agencies alone, and specifically calls attention to sections 15 and 26 of Title 15 U.S.C.A. of the Sherman and Clayton Acts.

Section 15 provides that: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Section 26 provides that: "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, * * * and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate a preliminary injunction may issue."

These sections obviously provide for the bringing by the petitioner of a plenary suit by its own name, if grounds sufficient to justify one exist. Neither of them, in my opinion, authorizes petitioner, neither a party to nor an intervenor in this suit, to take affirmative action therein. That action, in my judgment, and under the express terms of the decree, can only be taken by one of the parties to it.

Petitioner cites the case of United States v. Vehicular Parking, Limited, et al., D.C. 7 F.R.D. 336. That case, in my opinion, is not at all parallel. Rule 71 was not involved, only an application to intervene. There the defendants had been found guilty under the antitrust laws, and a judgment had been entered requiring the defendants, among other things, to grant reasonable royalties. The Magee-Hale Park-O-Meter Company requested permission to intervene under rule 24(a) of the Federal Rules and the application was granted. The court in that judgment had retained jurisdiction "for the purpose of enabling any of the parties to this Judgment to apply to the Court at any time for * * * the enforcement or compliance therewith and for the punishment of violations thereof." Petitioner was in the business of manufacturing and selling parking meters, and the defendants in the action had accused it of infringing certain claims of four of the patents referred to in the judgment and had offered a license under all of the patents but at a royalty which petitioner believed to be unreasonable. Judge Leahy, granting the application to intervene, wrote:

"The real difficulty in the case is that the judgment does not specifically permit any party requesting a license to apply to the court for determination of the reasonableness of the royalty. * * * Petitioner is affected by the judgment equally with the parties to it, as is any other competitor in the same field. It would obviously be most unreasonable to limit the judgment's application to the parties to the suit. Without pausing to consider whether, from a point of view of semantics, petitioner might not qualify as a party through the Department of Justice, which represents the public, I hold that the petitioner may intervene in this proceeding by permission of the court under Rule 24(b)."

Petitioner has not made application to intervene here, and the power of the court to enforce the decree is, by its very terms, limited to the parties of the action.

In view of this holding, it is not necessary for me to decide any of the other questions presented.