**EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**LEROY A. QUINN, Commissioner of Finance; CLAUDE CHRISTIAN, Acting Commissioner of Finance; and THE GOVERNMENT OF THE VIRGIN ISLANDS, Defendants**

Civil No. 81-5

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 9, 1994

Samuel H. Hall, (Samuel H. Hall), *for Molloy, Fredericks, Donovan and Bartlett*

Antonio Arocho-Soto, (Office of the Attorney General), *for the Government of the Virgin Islands and the Commissioner of Finance*

Alan Smith, (Hodge & Francois), *for the GERS*

Frederick G. Watts, (Watts, Streibich & Benham)

Brenda J. Hollar, (Brenda J. Hollar)

Henry L. Feuerzeig, (Dudley, Topper & Feuerzeig)

MOORE, *Chief Judge*

## OPINION

This matter comes before the Court nearly one decade after the parties to this litigation, the Government of the Virgin Islands and the Government Employees Retirement System of the Government of the Virgin Islands ("GERS"), purported to address the failure of the government to remit employee and employer contributions to the GERS on a timely basis. On December 10, 1984, this Court approved a consent judgment which provided in relevant part: "The . . . Commissioner of Finance shall, within thirty (30) days of each payroll period, certify and pay into the Employees' Retirement System Fund the total amount due of employee and employer contributions as defined in Title 3, Section 718."

According to four members of the Retirement System—Claude A. Molloy, Sr., Mariel William Fredericks, Elvin H. Donovan, and Orlando Bartlett ("movants")—the terms of this judgment have been largely ignored since it was approved by this Court. Instead, payments are made to the GERS between six and ten weeks following each payroll period and, as a result, the amount of GERS money in the government's bank account has increased more than fifteen fold since December 1984. These individuals consequently instituted a lawsuit in March of this year alleging that the GERS, several of its trustees, and the government have violated federal and territorial law through various actions and inactions.[1] Soon thereafter,

---

[1] For a detailed discussion of these allegations, see Molloy v. Monsanto, No. 1994-30, slip op. (D.V.I. June 9, 1994).

they also filed a motion to enforce the decade-old consent judgment pursuant to Rule 71 of the Federal Rules of Civil Procedure.[2]

## DISCUSSION

### A. *Standard of Review*

■ Rule 71 provides that "[w]hen an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if he were a party." Fed. R. Civ. P. 71. Before this Court may grant a motion to enforce, however, the following questions must be answered in the affirmative: (1) does this Court have subject matter jurisdiction over the motion to enforce; (2) do the movants have standing to seek enforcement of the consent judgment; (3) does the relief sought by the movants come within the terms of the original judgment. The government and the GERS submit that Molloy and the other movants lack standing to seek enforcement of the consent judgment and that the relief sought by them—timely payment of monies to the GERS by the local government and the establishment of a separate bank account for GERS funds—is not within the scope of the original judgment.

### B. *Discussion*

#### 1. *Does this Court Have Subject Matter Jurisdiction Over the Motion to Enforce?*

■ Although the Third Circuit "has not yet conclusively settled the question of whether courts have inherent jurisdiction to enforce settlement agreements in cases that were once properly before them," Halderman v. Pennhurst State School & Hospital, 901 F.2d 311, 317 (3d Cir. 1990), precedent suggests that retention of jurisdiction is particularly appropriate when the language of the original judgment reflects that such a course was contemplated by the parties themselves. See id.; see also Washington Hospital v. White, 889 F.2d 1294, 1299 (3d Cir. 1989). The 1984 judgment expressly pro-

---

[2] Although the motion to enforce was filed in the newly-instituted action, this Court deems it more appropriate to treat it as having been filed in this case.

vided that it could be amended under certain narrow conditions, and if such conditions had been present here, the argument for this Court's exercise of jurisdiction perhaps would have been clearer.[3] Nevertheless, we refuse to find that the mere act of expressly delineating one condition that would warrant an amendment to the judgment precludes this Court from exercising jurisdiction over this motion to enforce.[4]

### 2. *Do the Movants Have Standing to Seek Enforcement of the Consent Judgment?*

Courts have stated that a nonparty has standing to seek enforcement of a consent judgment "only if the interest that [the movant] seeks to vindicate is 'arguably within the zone of interests to be protected [. . . ] by the . . . [judgment] in question.'" Moore v. Tnagipahoa Parish School Board, 625 F.2d 33, 34 (5th Cir. 1980) (quoting Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153 (1970)). Conversely, an individual does not have standing to enforce a judgment if that person is no longer suffering an injury-in-fact. See Lasky v. Quinlan, 558 F.2d 1133, 1137 (2d Cir. 1977) (refusing to grant a motion filed by former inmates to enforce a judgment requiring the sheriff to improve prison conditions but noting that Rule 71 would permit "a separate action by a present inmate to enforce the order obtained by the [original] plaintiffs").

█ Although this is not a case in which the nonparty was explicitly mentioned in the original judgment or order that it is attempting to enforce,[5] this alone does not prevent a finding that

---

[3] The 1984 consent judgment provided that: "At this time, the Court does not have jurisdiction to compel the payment of the legal rate of interest by the Commissioner of Finance on delinquent employee and employer contributions[;] however, if an act is established by the Legislature authorizing the payment of interest, this Consent Judgment shall be amended to reflect such change."

[4] Furthermore, as explained below, the parties to the 1981 litigation submitted a "modified consent judgment" for this Court's approval after these movants filed the motion to enforce. See infra p. 6. Having invoked this Court's authority for purposes of permitting entry of a modified consent judgment, these parties cannot seriously contend that this Court nevertheless lacks jurisdiction over the motion to enforce.

[5] See, e.g., Washington Hosp. v. White, 889 F.2d 1294, 1300 (3d Cir. 1989) (noting that the movant-nursing home was listed in the appendix to the original con-

these movants have standing.[6] According to Virgin Islands law, the Retirement System is intended to benefit present and former government employees, such as movants, see, e.g., V.I. Code Ann. tit. 3, § 701(a)–(b) (1993 Supp.), and the Board of Trustees is required to act to benefit the System and, presumably, its members. See id. § 715(a). Thus, we find that movants do have standing to seek enforcement of the consent judgment.

### 3. Is the Relief Sought by the Movants Within the Scope of the Consent Judgment?

The final question this Court must answer is whether the relief sought by the movants is within the scope of the consent judgment. Although the government and the GERS initially contended that the movants' primary objective—the establishment of a separate bank account into which GERS funds would be paid—was not mandated by the terms of the 1984 consent judgment, they subsequently submitted for this Court's approval a modified judgment that significantly expanded the scope of the original judgment and required, among other things, the establishment of an interest-bearing bank account for the GERS. The modified judgment, which was approved by this Court on April 22, 1992, also requires the deposit of System receipts, including employer and employee contributions, into the bank account within twenty-one days after they are collected, the completion of System audits on or before October 15, 1994 and the subsequent preparation of annual reports in accordance with Virgin Islands law, and the transfer of interest earned on GERS monies in the possession of the government to the GERS bank account.

Although movants expressed reservations about the motivation for the submission of the modified judgment and the ultimate efficacy of some of its provisions, we do not believe that those concerns are properly before the Court. The intervening submission and approval of a modified judgment ironically renders the motion

sent decree even though it was not a party to the litigation); Berger v. Heckler, 771 F.2d 1556, 1565 (2d Cir. 1985) (noting that the consent decree concededly had been intended to provide certain benefits to nonparties).

[6] This case is readily distinguishable from others where federal courts have refused to exercise jurisdiction because the original judgment expressly prevented nonparties from seeking any relief relative to it. See, e.g., United States v. Paramount Pictures, Inc., 75 F. Supp. 1002, 1004 (S.D.N.Y. 1948).

to enforce premature.[7] However, in the event that the parties fail to meet the obligations established by the modified judgment as they become due, movants may renew their motion to enforce the judgment.

## CONCLUSION

■ Because the GERS and the government have stipulated to the entry of an enlarged, modified consent judgment that outlines with greater specificity the obligations of the parties with regard to the transfer of employer and employee contributions and related issues, we conclude that the issues presented in the motion to enforce are not yet appropriate for adjudication. The motion is denied without prejudice, however, so that, if necessary, movants may seek enforcement of the modified judgment at a later date in the event that the parties fail to comply with its terms. An appropriate order will be entered.

## ORDER

Upon consideration of the motion to enforce the consent judgment filed by Claude A. Molloy, Sr., Mariel William Fredericks, Elvin H. Donovan, and Orlando Bartlett, it is hereby

ORDERED that the motion is DENIED WITHOUT PREJUDICE.

---

[7] For example, the judgment requires the establishment of a bank account for the GERS within sixty days of the date that it was approved, or by June 21, 1994. In addition, the Commissioner of Finance must thereafter deposit System monies into the account within twenty-one days of the payroll period for which the monies are collected. Accordingly, this Court cannot entertain a motion within twenty-one days of the payroll period for which the monies are collected. Accordingly, this Court cannot entertain a motion to enforce before these events are scheduled to occur.

## TABLE OF CONTENTS

Introduction ........................................ 165

I. Plaintiffs' Request for a Temporary Restraining Order or a Preliminary Injunction ............................. 168

II. Plaintiffs' Motion for Class Certification .............. 169

III. Motions of the Government Employees Retirement System, the Board Members, and the Government of the Virgin Islands to Dismiss Plaintiffs' Complaint for Failure to State a Claim ............................................ 171

A. Standard of Review ............................. 171

B. Plaintiffs' Allegation that Defendants Have Deprived Them of Property Without Due Process of Law in Violation of the Fourteenth Amendment ............ 172

1. Plaintiffs' Property Interest in Retirement Annuity Payments and Accumulated Contributions ........ 174

2. Plaintiffs' Property Right to an Automatic Increase of Retirement Annuity Payments and a Supplemental Cost-of-Living Increase of Such Payments ..... 175

3. Plaintiffs' Property Interest in Annual Reports Reflecting the Financial Condition of the GERS ...... 178

4. Plaintiffs' Property Interest in Retirement Benefits Derived from the Interest and Dividend Income Earned by Contributions and Plaintiffs' Property Interest in the Secure Operation of the Retirement System Without an Unfunded Liability ........... 179

5. Plaintiffs' Property Right to Sue Derivatively on Behalf of the GERS ........................... 181

C. Plaintiffs' Allegation that the Government Has Taken Their Property Without Payment of Just Compensation ................................... 181

D. Plaintiffs' Allegation that the Individual Defendants Have Violated the Civil Rights Act, 42 U.S.C. § 1983 ......................................... 185

IV. Defendants' Motion to Dismiss the Territorial and Common Law Claims for Lack of Subject Matter Jurisdiction ........................................ 187

Conclusion .......................................... 189